UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BLAKE AUSTIN DILLARD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-2757** |
| **RICHARD P. NEAL** | **SECTION: "I"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Blake Austin Dillard, a state prisoner, filed this federal civil action pursuant to 42 U.S.C. § 1983 against Richard P. Neal, the medical administrator at the Terrebonne Parish Criminal Justice Complex ("TPCJC"). In his complaint, plaintiff stated his claim as follows:

> May/2022 I informed the medical staff I had Hepatitus. In fact I informed them I had been diagnosed by a doctor and I offered to present medical records and had my sister Mackenzie Lacoste (who is a nurse) contact them. Also I filed request and grievance on the kiosk stating I have hepatitus and I'm having internal pains and sores on my body. The head nurse responded back that they drew blood already and the results were nominal. "They <u>never</u> drew blood."[1]

At plaintiff's request, the Court ordered production of his TPCJC medical records. Those records, which have been filed into this federal record,[2] contain the following pertinent entries:

| 04/14/2022 | Plaintiff submitted a "Request for Medical Attention Form," in which he stated: "Just found out my ol lady has Hep C I would like to be tested." In response, the facility's notes stated: "I/m advised we do not do testing until I/m is showing sign and symptoms of anything happening."[3] |
|---|---|
| 04/14/2022 | Plaintiff submitted another "Request for Medical Attention Form." In this form, he stated: "My sister says to let you all know I have hep A, B, and C and need to be treated so it doesn't kill me in here." In response, the facility's notes stated that plaintiff's blood would be drawn to confirm whether he has hepatitis.[4] |

---

[1] Rec. Doc. 1, pp. 4-5.
[2] The medical records, copies of which were furnished to plaintiff for his use in this proceeding, appear in this federal record at Rec. Doc. 17. The following citations to those records are to the Bates-stamped page numbers appearing on the records.
[3] TPCJC 056.
[4] TPCJC 040.

| | |
|---|---|
| 04/18/2022 | Blood was drawn for laboratory tests.[5] |
| 04/19/2022 | The resulting laboratory report stated:<br><br>"Hepatitis A serology shows no evidence of acute hepatitis A."<br><br>"Hepatitis B serology shows no evidence of acute hepatitis B and no indication of exposure to Hepatitis B virus in the previous six to eight months."<br><br>"Hepatitis C serology shows no evidence of exposure to hepatitis C virus at this time. It can take up to 12 months after exposure to the hepatitis C virus for antibodies to become detectable in the blood in certain patients."[6] |
| 08/04/2022 | Plaintiff filed an administrative grievance, in which he stated: "I was diagnosed with hepatitius c and have informed medical staff multiple times that i need treatment for the past 90 days and they have refused to acknowledge me. It has been causing me internal pain and i have beginning to have sores both inside and outside my mouth. as being a DOC prisoner there is no way possible yall can refuse me of this treatment." The following day, defendant Neal responded: "reviewed chart i see blood was drawn, all labwork came back all with in nominal limits. if you are having other medical issues such as a rash please advise medical." Plaintiff appealed, alleging that only urine had been taken for testing. The warden then responded: "Labs drawn on 4/18/22 for the above medical issues per medical administrator." Plaintiff then responded: "okay thank you."[7] |
| 08/23/2022 | Plaintiff filed another administrative grievance, alleging that "it has been roughly 3 weeks since i brought it to your attention that no blood was drawn concerning my hepatitus" and noting that he had "take[n] the liberty to file suit and inform my pit bull like baby sister of the situation with hopes that when this turns out bad for me it will also turn out bad for everyone involved." The following day, defendant Neal responded: "I REVIEWED CHART I SEE THA THE MEDICAL STAFF DID LABS ON YOU BLOOD ON 4-18-22, RESULTS WERE ALL NEGATIVE, BUT SINCE YOU ARE SAYING WE DID NOT I WILL HAVE STAFF DRAW LABS AGAIN."[8] |

---

[5] TPCJC 014 and 038.
[6] TPCJC 038 and 216.
[7] TPCJC 108-109.
[8] TPCJC 106-107.

| 08/24/2022 | Blood was drawn for laboratory tests.[9] |
|---|---|
| 08/25/2022 | The resulting laboratory report stated:<br><br>"Hepatitis A serology shows no evidence of acute hepatitis A."<br><br>"Hepatitis B serology shows no evidence of acute hepatitis B and no indication of exposure to Hepatitis B virus in the previous six to eight months."<br><br>"Hepatitis C serology is consistent with exposure to hepatitis C virus. The CDC recommends performing a supplemental confirmatory test on initial positive hepatitis C antibody tests. HCV PCR quantitative can be used to confirm these results on a new sample."[10] |
| 09/09/2022 | Nursing Notes stated: "Spoke [with] MD S. Haydel in reference to situation where inmate states he has Hep A, B, C, – labs drawn 8/24/22 and results showed Hep C, labs were reviewed and orders to redraw in 3 mos, but due to inmate concern per S. Haydel we will draw Hep C Quantitative viral RNA and redraw lab in 1 month."[11] |
| 09/12/2022 | Blood was drawn and sent to the laboratory for HCV PCR testing.[12] |
| 09/14/2022 | The laboratory was unable to perform testing due to problems with the sample.[13] |
| 09/15/2022 | Blood was again drawn and sent to the laboratory for HCV PCR testing.[14] |
| 09/20/2022 | The laboratory was again unable to perform testing due to problems with the sample.[15] |
| 09/20/2022 | Blood was again drawn and sent to the laboratory for HCV PCR testing.[16] |
| 09/23/2022 | The laboratory was again unable to perform testing due to problems with the sample.[17] |
| 09/26/2022 | Blood was again drawn and sent to the laboratory for HCV PCR testing.[18] |

---

[9] TPCJC 013, 039, and 215.
[10] TPCJC 013 and 215.
[11] TPCJC 010.
[12] TPCJC 003-004.
[13] Id.
[14] TPCJC 002 and 211.
[15] TPCJC 211-212.
[16] TPCJC 209-210.
[17] Id.
[18] TPCJC 214.

| | |
|---|---|
| 09/28/2022 | The resulting laboratory report stated that plaintiff's "HCV/ PCR QUANT" and "HCV VIRAL LOG" values were outside of the normal range. The report also stated:<br><br>"Hepatitis A serology shows no evidence of acute hepatitis A."<br><br>"Hepatitis B serology shows no evidence of acute hepatitis B and no indication of exposure to Hepatitis B virus in the previous six to eight months."<br><br>"Hepatitis C serology is consistent with exposure to hepatitis C virus. The CDC recommends performing a supplemental confirmatory test on the initial positive hepatitis C antibody tests. HCV PCR quantitative can be used to confirm these results on a new sample."[19] |
| 10/03/2022 | TPCJC officials requested that the Louisiana Department of Public Safety and Corrections transfer plaintiff to one of its own facilities for Hepatitis C treatment.[20] |
| 10/11/2022 | In the interim, plaintiff received services from Start Corporation.[21] The program's clinical notes stated:<br><br>"Educated patient on HCV and risk factors for transmission. Educated about importance of HCV staging/fibrosis determination. Will proceed with treatment, generic Epclusa for 12 weeks. Patient was counseled on the importance of medication compliance for the 12 weeks, advised to contact me if 7 days missed. Educated patient on most common side effects (headache, fatigue, insomnia, nausea, and diarrhea). Educated patients while on medication to avoid acid suppressing medications or notify MD if they are needed. Needs hepatic function at 4 weeks on treatment if isolated HBcAb IgG+; otherwise no monitoring needed on treatment. Check hepatic function and HCV viral load 12 weeks after treatment complete. Counseled patient on risk of heavy drinking. Advised against alcohol use while on treatment. Based on staging will decide if long term follow up is needed; if needed will |

---

[19] Id.
[20] TPCJC 207.
[21] The Start Corporation is a private charitable organization that, *inter alia*, provides free medical services to the disenfranchised, including TPCJC inmates with hepatitis who meet the organization's eligibility requirements. See Bonnette v. Soignet, Civ. Action No. 21-1606, 2022 WL 3223189, at *3 (E.D. La. Apr. 21, 2022), adopted, 2022 WL 3214503 (E.D. La. Aug. 9, 2022).

|  | refer to hepatology clinic. If cirrhotic will get US and AFP every 6 months until patient can be seen by specialists. Will vaccinate for hep A and B as needed." "RTC in 6 months, around 12 weeks post-treatment."[22] |
|---|---|

Plaintiff was then transferred to one of the facilities operated by the Louisiana Department of Public Safety and Corrections, namely the Raymond Laborde Correctional Center in Cottonport, Louisiana.[23]

## I. Screening Standards

Plaintiff filed this federal civil action *in forma pauperis*. Concerning such actions, federal law provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action … is frivolous …." 28 U.S.C. § 1915(e)(2)(B)(i).

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law similarly requires: "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint … is frivolous …." 28 U.S.C. § 1915A(b)(1).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In determining whether a claim is frivolous, the Court has "not

---

[22] TPCJC 195.
[23] See Rec. Doc. 13, p. 2.

only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

Although broadly construing the complaint,[24] the undersigned recommends that, for the following reasons, plaintiff's complaint be dismissed as frivolous pursuant to the foregoing screening authority.

All inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). For the purposes of this decision, the Court will assume that plaintiff's hepatitis qualified as a "serious medical need."[25]

---

[24] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[25] Courts have differed on whether hepatitis is a serious medical need. See, e.g., Mitchell v. Nobles, 873 F.3d 869, 876 (11th Cir. 2017) (finding that hepatitis qualifies as a serious medical need); Ford v. Gusman, Civ. Action Nos. 11-2950 and 12-422, 2012 WL 2567063, at *9 (E.D. La. May 11, 2012) ("Various courts have found that chronic, asymptomatic hepatitis C … is a non-serious medical condition for purposes of Section 1983 analysis."), adopted, 2012 WL 2567034 (E.D. La. July 2, 2012); Lewis v. Pacheco, Civ. Action No. 08-CV-1151, 2010 WL 771227, at *3 (W.D. La. Mar. 2, 2010) ("It is beyond contention that an active Hepatitis B virus is a serious medical need."); Muniz v. Goord, No. 9:04-CV-0479, 2007 WL 2027912, at *8 n.38 (N.D.N.Y. July 11, 2007) ("Some district court decisions from within the Second Circuit have found Hepatitis C to not constitute a serious medical need. However, it appears that the bulk of district court decisions addressing the issue finds that Hepatitis C is a serious medical need." (citations omitted)).

Regarding the deliberate indifference requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, plaintiff's medical records show that his medical complaints were not ignored. Within one week of him first notifying jail officials in April of 2022 that he had hepatitis, he was tested. As already noted *supra*, the resulting laboratory report, which was sent to the TPCJC medical department and placed in his medical records, stated that there was no evidence of acute hepatitis A or B and no indication of recent exposure to hepatitis B or C, but cautioning that "[i]t can take up to 12 months after exposure to the hepatitis C virus for antibodies to become detectable in the blood in certain patients."[26] When he then alleged in August of 2022 that no testing had in fact been performed, jail officials disputed that allegation based on the medical records, but they nevertheless agreed to test plaintiff again. On that occasion, the laboratory results were the same

---

[26] TPCJC 038 and 216.

as to hepatitis A and B; however, the results stated that hepatitis C was now detected and that a quantitative viral test could be obtained to confirm that result. Less than two weeks later, the jail doctor ordered a quantitative test. Once the jail medical department received the results confirming that plaintiff's values were outside of the normal range, jail officials quickly requested that the Louisiana Department of Corrections transfer plaintiff to one of its own facilities for treatment and, in the interim, arranged for him to receive services and treatment through the Start Corporation. Those medical records effectively rebut any allegation of deliberate indifference in this case. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

Simply put: In a federal civil rights case such as this, the determinative question is whether the plaintiff's serious medical needs were met with deliberate indifference. Here, they clearly were not. Therefore, plaintiff's complaint should be dismissed *sua sponte* as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

## II. Motion to Dismiss

Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[27] which plaintiff opposed.[28] However, in light of the foregoing recommendation that plaintiff's complaint be dismissed as frivolous, the motion to dismiss should be denied as moot.

---

[27] Rec. Doc. 8.
[28] Rec. Docs. 15-1 and 15-2.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

It is **FURTHER RECOMMENDED** that defendant's motion to dismiss, Rec. Doc. 8, be **DENIED AS MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   23rd   day of January, 2023.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**